**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LORI A. PARKER,**

                    **Plaintiff,**                    **3:12-cv-1286**
                                                               **(GLS)**

                          v.

**CAROLYN W. COLVIN,**
Acting Commissioner of Social
Security,

                      **Defendant.**
_____
**APPEARANCES:**                         **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Hinman, Howard Law Firm            EUGENE D. FAUGHNAN, ESQ.
P.O. Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902-5250

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN     ANDREEA L. LECHLEITNER
United States Attorney                  Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**

**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Lori A. Parker challenges the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Parker's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

### II. Background

On September 20, 2005, Parker filed an application for DIB under the Social Security Act ("the Act"), alleging disability since January 27, 1997. (Tr.[1] at 41-43, 52.) After her application was denied, (*id.* at 19-22), Parker requested a hearing before an Administrative Law Judge (ALJ), which was held on March 13, 2008 before ALJ John Farley, (*id.* at 23, 612-26). Subsequently, ALJ Farley issued an unfavorable decision denying the requested benefits. (*Id.* at 8-16.) After the Appeals Council's subsequent denial of review, Parker commenced an action in Federal District Court. (*Id.* at 4-7, 660-62.) Thereafter, this court accepted in its entirety a Report

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 5.)

and Recommendation (R&R) filed February 22, 2011, recommending that the Commissioner's decision be remanded for further administrative proceedings. (*Id.* at 660-80.) Thereafter, the Appeals Council remanded the case to ALJ Elizabeth Koennecke (hereinafter "the ALJ") who again denied Parker's claim. (*Id.* at 643-55.) This became the Commissioner's final determination upon the Appeals Council's denial of review. (*Id.* at 481-83.)

Parker commenced the present action by filing her complaint on August 15, 2012 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 4, 5.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 7, 8.)

### III. <u>Contentions</u>

Parker contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 7 at 10-24.) Specifically, Parker claims that: (1) the ALJ failed to properly apply the treating physician rule; (2) the residual functional capacity (RFC) determination is not supported by substantial evidence; and (3) the ALJ improperly applied the Medical-Vocational Guidelines at step five. (*Id.*)

3

The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 8 at 4-13.)

## IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 7 at 5-9; Dkt. No. 8 at 2.)

## V. Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g) is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI. Discussion

### A. Treating Physician Rule

First, Parker contends that the ALJ failed to properly apply the treating physician rule. (Dkt. No. 7 at 10-13.) According to Parker, the ALJ "fail[ed] to fully examine the treatment records prior to March 31, 1999," the

4

date she was last insured. (*Id.* at 12.) Specifically, the ALJ "ignor[ed] the extensive treatment of [treating physician David] Ellison and the RFC opinion [he] provided." Parker also argues that the ALJ's failure to obtain and consider Dr. Ellison's functional capacity assessment was in contravention of this court's previous order remanding the case for further administrative proceedings. (*Id.* at 12-13; Tr. at 676.)

Controlling weight will be given to a treating source's opinion on the nature and severity of a claimant's impairments where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). When a treating source's opinion is given less than controlling weight, the ALJ is required to consider the following factors: the length, nature and extent of the treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner. 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must provide "'good reasons' for the weight given to the treating source's opinion." *Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) (citations omitted). "Nevertheless, where 'the evidence of record permits [the court]

5

to glean the rationale of an ALJ's decision,'" it is not necessary that the ALJ "'have mentioned every item of testimony presented to h[er] or have explained why [s]he considered particular evidence unpersuasive or insufficient to lead h[er] to a conclusion of disability.'" *Id*. (citation omitted).

Here, in his February 2011 R&R recommending remand of this case, Magistrate Judge Andrew T. Baxter noted that Parker's brief referenced a functional assessment completed by Dr. Ellison on October 21, 2007. (Tr. at 675.) However, Judge Baxter conducted a search of the record and could not find the alleged report. (*Id.*) Therefore, Judge Baxter instructed that, on remand, the Commissioner obtain and consider Dr. Ellison's functional assessment, and clarify the extent to which his assessment and the assessment of treating physician Kevin Hastings were based on medical evidence from the period before Parker's date last insured. (*Id.* at 676.) Upon remand, the ALJ contacted Parker's counsel notifying him that a hearing would be scheduled and requesting that he submit any additional evidence as soon as possible. (*Id.* at 685-86.) Thereafter, the ALJ again contacted Parker's counsel and specifically requested Dr. Ellison's functional assessment and that counsel contact Drs. Ellison and Hastings to clarify the extent to which their opinions were based on medical

6

evidence from the relevant period. (*Id.* at 696-67.) Parker's counsel subsequently responded, explaining that, although the "case was returned on remand with various directions, including providing [Parker] with an opportunity for a new hearing," after reviewing the record counsel requested that the ALJ "decide this case based upon the [a]dministrative [r]ecord." (*Id.* at 698.) Parker's counsel did not submit any additional evidence, nor request any additional time to obtain such evidence. (*Id.*) Accordingly, the ALJ determined Parker's claim based on the administrative record before her, including the treatment records of Dr. Ellison. (*Id.* at 646-55.) On appeal to the Appeals Counsel, Parker argued that the ALJ overlooked Dr. Ellison's functional assessment. (*Id.* at 638.) In its decision denying review of the ALJ's determination, the Appeals Council noted that Dr. Ellison's assessment is still not part of the record. (*Id.* at 627-30.)

Based on the foregoing, Parker's continued reliance on the functional assessment of Dr. Ellison is untenable. (Dkt. No. 7 at 12-13.)[2] To the extent that Parker argues that the ALJ was under a duty to re-contact Dr.

---

[2] Parker continues to cite to this record as "Dr. Ellison Medical Assessment of Ability to do Work Related Activities dated 10/21/07," without citation to anywhere in the administrative transcript or acknowledgment that it is not contained therein. (Dkt. No. 7 at 6.)

7

Ellison to obtain his opinion and any clarification necessary, (Dkt. No. 7 at 13), the court concludes that the ALJ satisfied her duty to develop the record. *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel." (internal quotation marks and citation omitted)). Although the ALJ did not personally re-contact Dr. Ellison, counsel's submissions suggested that he was already in possession of Dr. Ellison's functional assessment. (Tr. at 635, 637-38; Dkt. No. 7 at 6.) However, counsel failed to provide such assessment to the ALJ or the Appeals Council, despite the fact that: (1) the ALJ requested counsel obtain and submit any additional evidence; (2) the ALJ later contacted counsel to remind him that Dr. Ellison's assessment had not been received and providing him thirty more days to submit the evidence; (3) counsel subsequently responded and requested the ALJ make a decision based on the administrative record; and (4) Parker did not request the ALJ's assistance in contacting or securing evidence from Dr. Ellison. (Tr. at 685-86, 696-97). Under these circumstances, the court will not overturn the ALJ's decision for failure to develop the record. *See Jordan v. Comm'r of*

*Soc. Sec.*, 142 F. App'x 542, 543 (2d Cir. 2005).

## B. RFC Determination

Next, Parker argues that "there is no medical basis" for the ALJ's RFC determination, which "is vague at best." (Dkt. No. 7 at 13-18.) The Commissioner counters, and the court agrees, that the ALJ's RFC determination is supported by substantial evidence. (Dkt. No. 8 at 4-9.)

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 404.1545(a)(3). An ALJ's RFC determination must be supported by substantial evidence[3] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ concluded that, through her date last insured, Parker retained the RFC to "perform essentially the full range of sedentary work" as defined in the Regulations. (Tr. at 651.) Although Parker contends that

---

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

this determination was "vague," (Dkt. No. 7 at 17), the ALJ further provided an explicit function-by-function analysis, finding that Parker was able to sit, stand, walk, and use her left upper extremity without limitation, but could only use her right upper extremity to lift, carry, push, and pull ten pounds occasionally and less than ten pounds frequently, and could not crawl. (Tr. at 651.)

Parker's argument that the ALJ's RFC determination is unsupported by any medical evidence in the record is similarly unavailing. (Dkt. No. 7 at 17-18.) Here, Parker injured her shoulder in January 1997 and began physical therapy shortly thereafter. (Tr. at 121.) By March 1997, physical therapy treatment notes reveal that she was "slowly improving," with full range of motion of her right shoulder producing pain at the ends of the range. (*Id.* at 118.) At that time, Parker's physical therapist opined that she suffered moderate to minimal functional limitations and could not lift anything heavy. (*Id.*) Parker received an operative arthoscopy on her right shoulder and subacromial decompression in May 1997, which revealed that her rotator cuff was intact, and subsequent physical therapy notes continue to show Parker progressing. (*Id.* at 74-76, 103-116.) In August 1997, treatment notes indicate that Parker was "steadily improving," with

fair strength and full but painful range of motion.  (*Id.* at 103.)  Parker and her physical therapist discussed her returning to modified duty or finding another job, and she expressed a desire to return to her previous job.  (*Id.*)  Thereafter, Parker attempted to return to work, but found the lifting required "very difficult."  (*Id.* at 104.)  Dr. Ellison did not recommend "any further surgery or aggressive treatment" at this time, but, instead, recommended continued physical therapy.  (*Id.*)  Physical therapy notes through May 1998 continue to show Parker improving with physical therapy, and indicate moderate or moderate to minimal functional limitations.  (*Id.* at 94-100.)  In April 1999, shortly after Parker's date last insured, a Workers' Compensation Law Judge made an award for "a sixty percent schedule loss of use" of her right arm.  (*Id.* at 298.)  Prior to a second arthoscopy on her right shoulder in July 1999, Dr. Ellison noted that Parker was partially disabled from regular duty, but after the surgery she would be totally disabled.  (*Id.* at 232.)

In making her RFC determination, the ALJ relied on physical therapy treatment notes from the relevant period, as well as an MRI of Parker's right shoulder taken in April 1999 which found no evidence of a rotator cuff tear.  (*Id.* at 199, 652-53.)  The ALJ acknowledged that a physical therapist

11

is not an acceptable medical source, but gave the opinion that Parker suffered only moderate functional limitations "great weight," as it was the only assessment prepared prior to Parker's date last insured. (*Id.* at 654); *see* SSR 06-03p, 71 Fed. Reg. 45,593, 45,595 (Aug. 9, 2006) (explaining that opinions from medical sources who are not "acceptable medical sources," are not entitled to controlling weight, but rather are "evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file").[4] For these reasons, the court cannot find that the ALJ's RFC determination is unsupported by substantial evidence.

## C. Step Five Determination

Parker also argues that the ALJ improperly utilized the Medical-Vocational Guidelines—as opposed to consulting with a vocational expert (VE)—in making the determination that Parker could perform other work. (Dkt. No. 7 at 18-19.) Further, Parker contends that, based on the limitations contained in Dr. Hastings' assessment, the Guidelines direct a finding of disability. (*Id.* at 20-24.) On the other hand, the Commissioner

---

[4] The ALJ gave the assessment of Dr. Hastings, who had not treated Parker during the relevant time period "minimal evidentiary weight," because it was unsupported by contemporaneous records. (Tr. at 653-54.)

argues that the ALJ's step five determination was legally sound and supported by substantial evidence. (Dkt. No. 8 at 12-13.) The court agrees with the Commissioner.

In making a step-five ruling, an ALJ may rely on the Medical-Vocational Guidelines, commonly referred to as "the grids," found in 20 C.F.R. pt. 404, subpt. P, app. 2, as long as the claimant's age, education, work experience, and RFC coincide with the criteria of a rule contained in those Guidelines. *See* 20 C.F.R. § 404.1569; *see also Calabrese v. Astrue*, 358 F. App'x 274, 275 n.1 (2d Cir. 2009). However, "if a claimant's nonexertional impairments 'significantly limit the range of work permitted by h[er] exertional limitations' then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (quoting *Blacknall v. Heckler*, 721 F.2d 1179, 1181 (9th Cir. 1983)). In that case, the ALJ should consult with a VE before making a determination as to disability. *See id.* Notably, "the mere existence of a nonexertional impairment does not automatically require the production of a [VE] nor preclude reliance on the guidelines." *Id.* at 603. Instead, exclusive reliance on the grids will only be deemed inappropriate where the

13

nonexertional impairments *"significantly* limit the range of work permitted by h[er] exertional limitations." *Id.* at 605 (emphasis added) (internal quotation marks and citation omitted).

 Here, at step five, the ALJ determined that, because Parker could perform the full range of sedentary work, reliance on the grids was appropriate. Parker argues that because she suffers from nonexertional impairments such as pain, the ALJ should have obtained the testimony of a VE. (Dkt. No. 7 at 19.) However, as the ALJ considered Parker's subjective complaints of pain in determining her RFC, and concluded that she remained able to perform sedentary work, this argument is without merit. (Tr. at 653); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983) (explaining that a finding of disability under the Regulations requires more than a "mere inability to work without pain.") Further, Parker's argument that she suffered additional limitations that so narrow the range of work she might otherwise perform assumes that there were errors in determining her RFC. (Dkt. No. 7 at 21-24.) However, because the court has already found otherwise, it suffices to say that Parker's argument is without merit. As such, the ALJ's use of the grids was appropriate, and her determination that Parker could perform other work is

14

supported by substantial evidence.

## D. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Parker's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

October 18, 2013
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court